IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RALPH FRANCIS GARDUNO, | ) | CASE NO. 5:14 CV 2266 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| BENNIE KELLEY, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me[1] is the petition of Ralph Francis Garduno for a writ of habeas corpus under

28 U.S.C. § 2254.[2] Garduno was convicted by a Portage County Common Pleas jury in

March 1976 of attempted aggravated murder and aggravated murder[3] and is serving a life

term.[4] He is currently incarcerated at the Grafton Correctional Institution in Grafton, Ohio.[5]

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Christopher A. Boyko by order dated October 22, 2014.

[2] ECF # 1; *see* 28 U.S.C. 2254 (2012).

[3] ECF # 11, Attachment 1 at 21.

[4] Garduno was originally sentenced to death, but pursuant to *Lockett v. Ohio*, 438 U.S. 586 (1978) and *Bell v. Ohio*, 438 U.S. 637 (1978) (ruling that Ohio's death penalty was unconstitutional) the Ohio Court of Appeals modified the trial court's judgment by reducing the penalty from death to life imprisonment and affirmed as modified. *State v. Garduno*, 11th Dist. No. 710, 1979 WL 208138 *13.

[5] Ohio Department of Corrections www.drc.ohio.gov/offendersearch.

Garduno raises one ground for habeas relief.[6] The State, in its return of the writ, contends that ground one should be dismissed as untimely. Garduno has not filed a traverse.

For the reasons that follow, I will recommend Garduno's petition be dismissed with prejudice as untimely filed.

## Facts

### A.    Underlying facts, conviction, and sentence

The relevant facts found by the Ohio appeals court emerge from its review of the record.[7]

On February 18, 1975, Garduno, Kenneth McDaniels, James Krug, and Karl Netolicky were driving from Akron to Youngstown.[8] Garduno, who was driving, stopped the car in an isolated area, and McDaniels pulled a gun on Krug and Netolicky.[9] Garduno told the victims that he was under orders to either kill them or he would be killed.[10] Garduno and McDaniel walked Krug and Netolicky to the edge of the road, and McDaniel shot them.[11]

---

[6] ECF # 1.

[7] ECF # 11, Attachment 2 at 315.

[8] *Id.* at 316.

[9] *Id.*

[10] *Id.*

[11] *Id.*

Krug and Netolicky were found by a passing motorist about 5:00 a.m.[12] Krug was rushed to the hospital where he was found to have multiple bullet wounds, one of which shattered his spine causing him to be paralyzed from the waist down.[13] Netolicky also sustained several bullet wounds resulting in his death.[14]

Krug identified Garduno and McDaniels as the assailants.[15] Warrants were issued for their arrest, and both were apprehended toward the end of 1975.[16]

After the case was tried by a jury, Garduno was found guilty of aggravated murder with specifications and attempted aggravated murder.[17] Following a mitigation hearing, on May 27, 1976, the trial court sentenced Garduno to death for aggravated murder and seven to twenty-five years for attempted aggravated murder.[18]

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 316-317.

**B.      Direct Appeal**

*1.      Ohio Court of Appeals*

Garduno, through counsel, filed a timely[19] notice of appeal[20] with the Ohio court of

appeals.  In his brief, Garduno raised twenty-one (21) assignments of error:[21]

1.      The court erred in prohibiting counsel for the defendant from inquiring on voire dire examination into the question of the juror's belief or disbelief in capital punishment and their attitude in this regard. By doing so the court prejudiced the defendant by denying his guaranteed right to Due Process under the Fifth and Fourteenth Amendments to the Federal Constitution, and Article One Section 10 of the Ohio Constitution.  The court also denied the defendant's right under the Sixth Amendment to the U.S. Constitution and under Article One section 10 of the Ohio Constitution to an impartial jury.

2.      The trial court committed prejudicial error on its charge to the jury as to the definitions of "restrain" and "terrorize". (Transcript p. 811)

3.      The trial court erred in permitting Dr. Arnold and Dr. Sybert to give ballistics testimony as to the presence of stipple marks when they were not qualified as experts in this area.

4.      The court erred in not striking James Krug's testimony or giving a special instruction, which was requested, in regards to the fact that James Krug's demeanor could be affected by the codeine he was under the influence of at the time of testifying. The defendant was prejudiced by the fact that Krug's testimony was given full credibility even though

---

[19] Under Ohio App. R. 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed. *See*, *Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan.18, 2007) (unreported case). Garduno's conviction and sentence were journalized on May 27, 1976. (ECF 11, Attachment 1 at 1), and his appeal to the Ohio court of appeals was filed on April 30, 1976.

[20] *Id.* at 30.

[21] *Id.* at 31 (the text has been modified from its original form of all capitalization for readability purposes).

he was under the influence of codeine at the time of testifying. The defendant's right to confront the witness against him as guaranteed by the Sixth Amendment to the Federal Constitution and Article One, Section 10 of the Ohio Constitution were violated.

5. The trial court erred in admitting x-rays of Karl Netolicky (state exhibits 60-68) into evidence and erred in permitting Dr. Sybert to testify as to those x-rays.

6. The trial court erred in allowing the prosecutor to discuss, in his opening statement, crimes allegedly committed by the defendant which were not charged in the indictment and also in allowing James Krug to testify about crimes that were not charged in the indictment.

7. The trial judge erred in commenting incorrectly on the evidence to the effect that Dr. Baird had not testified that Krug had retrograde amnesia.

8. The court committed error when it allowed the state of Ohio to charge the defendant as the principal and then adduced evidence and develop a theory during the trial that defendant was an aider and abettor. The defendant was substantially prejudiced by the court's error in that he was denied his Due Process rights guaranteed by the Fifth and Fourteenth Amendments to the Federal Constitution and Article One Section Ten of the Ohio Constitution. The defendant was also denied his rights under the Sixth Amendment to the Federal Constitution and Article One, Section Ten of the Ohio Constitution to be informed of the nature and cause of accusation. The defendant was also prejudiced in not being able to prepare his defense, in that the evidence proved him an aider and abettor whereas the indictment led the defendant to anticipate evidence of his being principal.

9. Defendant should be granted a new trial due to the prejudicial statements of the state's witness, Robert Valesko, which materially affected the substantial rights of the defendant to a fair trial.

10. The tral court erred in not charging the jury on alesser included offenses of kidnapping, (abduction and unlawful restraint) and in not permitting defense counsel to argue the lesser included offenses on his closing argument.

11.    Ohio Revised Code §2929.03 (e) and §2929.04 (b) violate the Eighth and Fourteenth Amendments in that these statutes do not permit the sentencing judge to consider, as mitigating factors, the defendant's character, age, prior record, intent to cause death, or the part played in the crime.

12.    Capital punishment, together with the pre-sentence confinement, constitutes cruel and unusual punishment in violation of the eighth and fourteenth amendments to the U.S. Constitution.

13.    The Ohio kidnapping statute, Revised Code 2905.01 is unconstitutionally overbroad.

14.    The Ohio statutes imposing the death penalty are unconstitutional in that there is no provision for jury input in the sentencing procedure.

15.    The death sentence is a denial of defendant's rights to Due Process under Art. 1. §16 of the Constitution of Ohio and the Fourteenth Amendment to the constitution of the United States in that it deprives the defendant of a fundamental right and is unnecessary to promote any compelling state interest.

16.    Ohio Revised Code Sections 2929.03 (e) and 2929.04 (b) violate the Due Process clause of the Fourteenth Amendment and Article 1 Section 16 of the Constitution of Ohio by placing upon the defendant the burden of proof at the mitigation hearing.

17.    The trial court committed reversible error by placing upon the defendant-appellant the burden of proving by a preponderance of the evidence that a mitigating factor or factors exist under Ohio Revised Code 2929.03 and 2929.04 and that he should therefore not be executed.

18.    The trial court erred in not permitting counsel for the defendant-appellant to examine the author of reports submitted to the court for the purposes of the mitigation hearing pursuant to the Ohio Revised Code §2929.03 (d) and §2947.06:

a.    By not permitting such examination the court denied the defendant-appellant his 6th Amendment right to confront witnesses;

b.    By not permitting such examination, the court was permitted to take into consideration in sentencing the defendant-appellant the false and highly prejudicial statements contained in the pre-sentence investigation report.

19.    The court erred in ruling that the mitigating factor under Ohio Revised Code §2929.04 (b)(1) was not established by a preponderance of the evidence:

(B)    regardless of whether one or more of the aggravating circumstances listed in division (a) of this section is specified in the indictment and proved beyond a reasonable doubt, the death penalty for aggravated murder is precluded when, considering the nature and circumstances of the offense and the history, character and condition of the offender, one or more of the following is established by a preponderance of the evidence.

(1)    the victim of the offense induced or facilitated his own death.

20.    The trial court erred in excluding evidence at the mitigation hearing relevant to sentencing under Ohio Revised Code 2929.03 (d).

21.    The defendant-appellant was denied a proper psychiatric examination as required by Ohio Revised Code §2929.03 (d) and §2947.06.

The state filed a response to Garduno's brief.[22]  On or about July 28, 1978, Garduno filed a motion to modify sentence[23] requesting the following:

[E]nter an appropriate order modifying the death sentence previously imposed by the Trial Court to a sentence of life imprisonment as prescribed by Ohio Revised Code 2929.02.

[or]

---

[22] ECF 11, Attachment 2 at 119.

[23] *Id.* at 169.

In the alternative, the Defendant-Appellant moves this Court to remand him to the custody of the Portage County Sheriff's Department with instructions to vacate the sentence of death and impose a sentence of life imprisonment.

The state filed a response in opposition[24] and Garduno filed a reply.[25] On or about December 18, 1978, the state appellate court denied Gardino's motion to modify sentence.[26]

But, on July 2, 1979, the state appellate court decided:[27]

> **As to Assignments of error I, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, and XXI, the United States Supreme Court has ruled that the Ohio System for determining the death penalty is unconstitutional because Revised Code 2929.04(B) is too limiting in the factors to be considered.[28]**

> **Accordingly, we modify the judgment of the trial court and the death sentence of the appellant is reduced to life imprisonment. In doing so we follow the action of the Supreme Court of Ohio in its entry of August 16, 1978, as to a large number of defendant's on death row. Also, this is in accordance with Case No. 707, *State v. McDaniel*, decided by this court on December 18, 1978.[29]**

The balance of the Assignments of Error are without merit.[30]

---

[24] *Id.* at 171.

[25] *Id.* at 174.

[26] *Id.* at 179.

[27] ECF # 11, Attachment 1 at 3, *State v. Garduno*, 11th Dist. No. 710, 1979 WL 208138, *4.

[28] *Id.* at 10.

[29] *Id.*

[30] Id.

-8-

In a subsequent collateral appeal, the state appellate court further explained:[31]

> **{¶6} While appellant's direct appeal was pending, the United Stated Supreme Court in *Lockett* and *Bell* held that Ohio's statutory scheme for determining the death penalty was unconstitutional. These cases were remanded to the Supreme Court of Ohio for further proceedings.**
>
> **{¶7} Pursuant to this remand, the Ohio Supreme Court issued a judgment entry, dated August 16, 1978, ordering the judgments in 54 listed cases affirming the death sentence of each defendant named therein be modified and that the death sentence of each such defendant be reduced to life imprisonment. Appellant's case was not included in this list as it was still pending in thei court when the Supreme Court of Ohio issued this entry.**
>
> **{¶8} This court, in Garduno I, modified the trial court's judgment "by reducing the penalty from death to life imprisonment and affirmed as modified." *Id.* at \*13.  This court stated that, "[i]n doing so we follow the action of the Supreme court of Ohio in its entry of August 16, 1978." Further, this court in its judgment entry, dated July 2, 1979, "modified and affirmed as modified" the trial court's judgment and incorporated the court's decision.  Appellant did not appeal this court's judgment to the Ohio Supreme Court.**

---

[31] ECF #11, Attachment 2 at 317, *State v. Garduno*, 11th Dist. No. 2012-P-0138, 2013-Ohio-4300.

## 2.     *Ohio Supreme Court*

Garduno, through counsel, filed a timely[32] notice of appeal[33] with the Ohio Supreme Court.  According to the docket sheet,[34] on or about October 29, 1979, Garduno's "motion for leave to appeal from the Court of Appeal overruled by the Supreme Court filed." There are no other documents in the record relating to the Ohio Supreme Court.

## 3.     *Declaratory judgment action*

On June 24, 2002, Garduno filed a civil declaratory judgment complaint in the Portage County Common Pleas Court.[35] In response, the Ohio Adult Parole Authority filed a motion to dismiss.[36]  On July 25, 2002, the Portage County Common Pleas Court granted the motion to dismiss and dismissed the complaint in its entirety.[37] Garduno,  *pro se*, filed an untimely

---

[32]  *See* Ohio S.Ct.Prac.R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought.); *See*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day limit) (unreported case).  Here, the appellate judgment was entered in on July 2, 1979 and the notice of appeal filed in the Supreme Court on July 24, 1979.

[33]  *Id.* at 180.

[34]  *Id.* at 183.

[35]  *Id.* at 184.

[36]  *Id.* at 219.

[37]  *Id.* at 225.

notice of appeal[38] to the Ohio court of appeals. On October 7, 2002, the state appellate court sua sponte dismissed Garduno's appeal because it was untimely under Ohio App.R. 4(A).[39] Garduno did not appeal the dismissal to the Ohio Supreme Court.

### 4. *Post conviction relief proceedings*

On September 19, 2011, Garduno filed, *pro se,* an illegible motion for resentencing in the trial court, which according to the record was never ruled upon.[40] On August 10, 2012, Garduno filed another pro se motion for resentencing.[41] The state filed a response in opposition[42] and Garduno filed a reply brief.[43] On August 27, 2012, the trial court overruled Garduno's motion for resentencing.[44]

---

[38] Under Ohio App. R. 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed. See , *Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan.18, 2007) (unreported case). Garduno's conviction and sentence were journalized on July 25,2002 *(Id.* at 228), and his appeal to the Ohio court of appeals was filed on August 30, 2002.

[39] *Id.* at 230.

[40] *Id*. at 234.

[41] *Id*. at 244.

[42] *Id.* at 253.

[43] *Id.* at 256.

[44] *Id.* at 259.

### a.    *Direct appeal*

On October 23, 2012 Garduno filed, *pro se*, an untimely notice of appeal,[45] and a *pro se* motion for leave to file a delayed appeal,[46] which the state appellate court granted.[47] In his brief, Garduno raised the following assignment of error:[48]

> 1.    The trial court committed error when denying motion to correct illegal sentence, in a vacated death-penalty case, pursuant to R.C. §2967.19; 139 v. s1, eff. 10-19-81; Criminal Rule 36; and, the dictates of *State v. Harris*, 2012 Ohio Lexis 1000.

The state filed a brief in opposition[49] and Garduno filed a *pro se* reply brief.[50]  On September 30, 2013, the states appellate court overruled Garduno's assignment of error and affirmed the judgment of the trial court.[51]

---

[45]   Garduno's conviction and sentence were journalized on August 27, 2012 (*Id.* at 259), and his appeal to the Ohio court of appeals was filed on October 23, 2012 (*Id.* at 260).

[46] *Id.* at 261.

[47] *Id.* at 265.

[48] *Id.* at 267 (the text has been modified from its original form of all capitalization for readability purposes).

[49] *Id*. at 289.

[50] *Id*. at 300.

[51] *Id.* at 315.

-12-

### b.    Supreme Court of Ohio

Garduno, *pro se*, filed a timely[52] notice of appeal[53] with the Ohio Supreme Court.

In his memorandum in support of jurisdiction, Garduno raise the following proposition of

law:[54]

> 1.    Does a modified 'death' sentence to 'life imprisonment' provide
>       adequate knowledge of a 'parole eligible' prisoner without indication
>       of whether the prisoner is parole eligible or has a 'minimum' sentence.

The state filed a response in opposition.[55]  On February 19, 2014, the Ohio Supreme Court

declined to accept jurisdiction of Garduno's appeal pursuant to Ohio S.Ct. Prac. R.

7.08(B)(4).[56]

### 5.    Mandamus action

Garduno was also a *pro se* relator in an original mandamus action that several pro se

inmates filed against ODRC representatives in Ohio's Tenth District Court of Appeals.[57] The

mandamus complaint requested a writ of mandamus ordering the ODRC responders to

restore their "pre-7-1-96 position which allowed security reductions to 'minimum' and/or

---

[52]   The appellate judgment was entered on September 30, 2013 and the notice of
appeal filed in the Supreme Court on November 7, 2013, which was within the 45 day limit
to file.

[53]  *Id*. at 326.

[54]  *Id*.

[55]  *Id*. at 350.

[56]  *Id*. at 361.

[57]  *State ex rel. Richard v. Mohr*, 10th Dist. No. 12AP-873, 2013-Ohio-676 (*Id.* at 362)

'honor' status where otherwise permitted" and raised issued relating to the inmates' parole eligibility.[58] Garduno and the other relators filed a motion for class certification[59] and a motion for the appointment of counsel.[60]

The State respondents filed a motion to dismiss[61] and the Inmate relators filed a brief in opposition.[62] On October 31, 2012, a magistrate recommended that the mandamus court grant the State respondents' motion to dismiss and deny the relator's motion for class certification and appointment of counsel.[63]

The relator Inmates filed objections to the magistrate's decision[64] and the State respondents filed a memorandum contra to the objections.[65] On February 26, 2013, the state mandamus court overruled the relator Inmates' objections, adopted the magistrate's decision to grant the State respondents' motion to dismiss and deny the Inmate relators' motion for

---

[58] *Id.* at 363.

[59] *Id*. at 397.

[60] *Id*. at 406.

[61] *Id*. at 414.

[62] *Id* at 423.

[63] *Id*. at 438.

[64] *Id.* at 443.

[65] *Id*. at 450.

class certification and appointment of counsel, and dismissed the mandamus action.[66]
Garduno and the other inmates did not appeal that decision to the Ohio Supreme Court.

## C.    Federal habeas corpus

On October 10, 2014, Garduno filed[67] a federal petition for habeas relief.[68] In his
petition, Garduno raises one ground for relief:[69]

> GROUND ONE:    As stated supra [*Sic*], Petitioner's sentence was modified
> to 'life imprisonment' on July 2, 1979.  On July 2, 1979
> no avenue was available for resentencing to afford the
> trial court to provide prison officials with a proper
> journal entry depicting whether or not Petitioner was
> parole eligible. The sentencing journal entry states 'death
> by electrocution'.  It does not read 'life imprisonment' as
> modified by the court of appeals on July 2, 1979. On
> October 19, 1981, Ohio's General Assembly passed 139
> v S 1, eff. 10/19/81.  See (former) R.C. 2967.19.  In a
> dissenting [*Sic*] opinion, the court of appeal in State v.
> Ralph F. Garduno, 11th Dist. No. 12-P-139 denied
> appellant's appeal on 9/30/13. Petitioner exhausted the
> appeal to the Ohio Supreme Court Case No. 13-1749 in
> February, 2014.

---

[66] *Id*. at 455.

[67] Garduno states that he placed his petition for Writ of Habeas Corpus in the prison
mailing system on September 26, 2014.  The petition was docketed on October 10, 2014
(ECF # 1).

[68] ECF #1.

[69] *Id*. at 5.

# Analysis

**A.**     **Preliminary observations**

Before proceeding further, I make the following preliminary observations:

1.      There is no dispute that Garduno is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[70]

2.      There is dispute, as detailed above, that this petition was timely filed under the applicable statute.[71]

3.      In addition, Garduno states,[72] and my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[73]

4.      Moreover, subject to the timeliness arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[74]

5.      Finally, Garduno has not requested the appointment of counsel,[75] but has requested an evidentiary hearing to develop the factual bases of his claims.[76]

---

[70] *See* 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[71] *See* 28 U.S.C. § 2254(d)(1); *Bronaugh* v. Ohio, 235 F.3d 280, 283-84 (2000).

[72] ECF # 1 at 12.

[73] *See* 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (2006).

[74] *See* 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[75] *See* 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[76] *See* 28 U.S.C. § 2254(e)(2).

**B.      Standard of review**

*1.      Timeliness*

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[77] a person in custody under a judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[78]

Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the pendency of a "properly filed" application for state postconviction relief or other collateral review. A state application for postconviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as those prescribing the time limits for filing.[79] State postconviction

---

[77] Pub. L. No. 104-132, 110 Stat. 1214.

[78] 28 U.S.C. § 2244(d)(1).

[79] *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

-17-

or collateral review applications rejected by the state courts on timeliness grounds are not "properly filed" and, therefore, are not subject to statutory tolling under § 2244(d)(2).[80]

"The tolling provision does not, however, 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run."[81] Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar.[82]

Moreover, the AEDPA's statute of limitations is subject to equitable tolling,[83] "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control."[84] Equitable tolling is granted "sparingly."[85] A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely

---

[80] *See*, *Allen v. Siebert*, 552 U.S. 3, 5-6 (2007) (per curiam); *see also*, *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003).

[81] *Vroman*, 346 F.3d at 602 (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

[82] *Id.*

[83] *See*, *Holland v. Florida*, 560 U.S. 631, 646 (2010).

[84] *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)), cert. denied, 133 S. Ct. 187 (2012).

[85] *Id.* (quoting *Robertson*, 624 F.3d at 784).

filing."[86] Although the Sixth Circuit previously used a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland v. Florida's* two-part test has replaced the five-factor inquiry as the "governing framework" to apply.[87]

### 2.    *Equitable tolling*

The doctrine of equitable tolling allows courts to toll a statute of limitations when "a litigant's failure to meet a legally-mandated deadline unavoidable arose from circumstanced beyond that litigant's control."[88] The Supreme Court has held that the statute of limitations for habeas petitions is "subject to equitable tolling in appropriate cases."[89] However, the doctrine of equitable tolling is used sparingly by federal courts.[90] The party seeking equitable tolling bears the burden of proving he is entitled to it.[91] A habeas petitioner is entitled to equitable tolling only if he can make a two-part showing: (1) he has pursued his rights diligently; and (2) some extraordinary circumstance prevented timely filing.[92]

---

[86] *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also*, *Pace*, 544 U.S. at 418.

[87] *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling*, 424 F. App'x 439, 442 n.1 (6th Cir. 2011), cert. denied, 132 S. Ct. 456 (2011)).

[88] *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000).

[89] *Holland v. Florida*, 560 U.S. 631, 649 (2010).

[90] *See*, *Graham-Humphreys*, 209 F.3d at 560.

[91] *See*, *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

[92] *See*, *Holland*, 560 U.S. at 649.

C.     **Application of standard**

The petition should be dismissed as untimely filed.

As noted above, this petition arises out of Guarduno's 1976 conviction on various charges related to the murder Karl Netolicky and the attempted murder of James Krug. More specifically, the sole ground for relief asserted here challenges a 1979 decision of the Ohio appeals court that reduced Guarduno's death sentence to life imprisonment.[93] Because the Ohio Supreme Court dismissed Guarduo's appeal from this appellate judgment on July 24, 1979,[94] Guarduno would have had an additional 90 days from that date - or until October 22, 1979 - to seek a writ of certiorari from the United States Supreme Court. And, because Guarduno made no such filing with the United States Supreme Court, the applicable one-year habeas limitations period would have began running one day after the 90-day period elapsed on October 23, 1979, and expired on October 23, 1980.

In this case, Guarduno's petition itself states that he placed the petition in the prison mail system on September 26, 2014[95] - or nearly 34 years after the time for filing had expired.

As the State observes, this period was not tolled by statute, since neither Guarduno's 2011 state post-conviction filing and subsequent appeals nor his 2002 motion for a

---

[93] *See*, ECF # 11 at 17 (citing record).

[94] ECF # 11, Attachment at 181.

[95] ECF # 1 at 16.

declaratory judgment could not have tolled a time clock that had already long elapsed.[96] Further, the same analysis precludes any statutory tolling from the 2013 mandamus filing, which was also filed well after the relevant time period was over.[97]

Similarly, the State observes that Guarduno has not established any ground for equitable tolling. The simple fact is that Guarduno allowed his original conviction and sentence to go unaddressed through decades of legal inactivity.  Neither his status as a *pro se* litigant nor the fact that he was incarcerated during that time can excuse such an exceptionally long slumber in pursuit of any legal remedies for an alleged constitutional wrong.

## Conclusion

Accordingly, I recommend that the present *pro se* petition of Ralph Francis Guarduno for a writ of habeas corpus, together with the request for an evidentiary hearing,[98] be dismissed with prejudice as untimely filed.

Dated: February 26, 2016                              s/ William H. Baughman, Jr.
                                                                     United States Magistrate Judge

---

[96] ECF # 11 at 20.

[97] *Id*.

[98] ECF # 1, Attachment at 1.

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[99]

---

[99] *See Thomas v. Arn*, 474 U.S. 140 (1985); *see*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).